IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JANET GAUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 07-0901-CV-W-GAF |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Presently before the Court is Defendant Michael J. Astrue, Commissioner of Social Security's ("Defendant") Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56 ("Rule 56"). (Doc. #20). Defendant argues no material facts are in dispute and that summary judgment is warranted as a matter of law. *Id.* Plaintiff Janet Gaugh ("Plaintiff") opposes, stating factual disputes remain. (Doc. #21). For the following reasons, Defendant's Motion is GRANTED.

## DISCUSSION

**I.    Facts**

The instant case arises from Plaintiff's allegations of a hostile work environment created by a co-worker's inappropriate conduct. (Complaint). Plaintiff, a current employee of the Social Security Administration ("SSA") at its Program Service Center in Kansas City, Missouri, has worked for the SSA for over ten years in various positions. (Plaintiff Depo., 3:24-4:1; Defendant's Statement of Facts ("DSOF"), ¶1). In 2005 and 2006, while serving as a Post Entitlement Technical

1

Expert in Module 11, Section 2[1] of the Payment Center for the regional SSA Processing Center, Plaintiff mentored and trained Darry Juitt, a Technical Support Technician and reviewed all of his work. (Plaintiff Depo., 10:22-23, 11:13:18, 22:12-16).

During this time, Plaintiff's direct supervisor was Cora Carter, Assistant Module Manager for Module 11, and Plaintiff's second-line supervisor was Henry Kistner, Module Manager for Module 11. (Kistner Aff., ¶6; DSOF, ¶3). On March 24, 2006, Plaintiff contacted Kistner and alleged that Juitt had subjected her to a hostile work environment by repeatedly kissing her on the cheek without her permission, asking to kiss her, and touching her inappropriately.[2] (Plaintiff Depo., 23:9-15; Kistner Aff., ¶30; Kistner Statement, p. 2). The allegations surprised Kistner. (Kistner Statement, p. 2). He told Plaintiff that if her allegations against Juitt were true, then his conduct was inappropriate and had to be addressed. *Id.* Plaintiff then informed Kistner that she did not want a formal investigation of her complaints. *Id.*

In response to Plaintiff's allegations against Juitt, Kistner immediately contacted Joel Aldape, Operations Manager for Section 2, in order to relay Plaintiff's allegations to him. (Kistner Aff., ¶30; Kistner Statement, p. 2; Plaintiff Depo., 14:19-15:12). Aldape recommended that Kistner ask Plaintiff to put her allegations in writing. *Id.* Consequently, Kistner requested a written statement from Plaintiff, which she provided, and Kistner delivered that statement to Aldape and Lynn Marten, Assistant Regional Commissioner. *Id.* Based on Plaintiff's statements and upon the Civil Rights and Equal Opportunity Manager's recommendation, Aldape moved Juitt to a different

---

[1] The Payment Center consists of five sections; each section is then subdivided into five modules. (Plaintiff Depo., 11:22-12:4).

[2] Plaintiff also alleges Juitt attempted to kiss her on the mouth on March 22, 2006. (Plaintiff Aff., p. 34).

2

module on the opposite end of the building when he returned on Monday, March 27, 2006.[3] *Id.*; Marten Depo., 14:8-14; DSOF, ¶19.

The SSA has a policy for the prevention and elimination of harassment in the workplace, which provides that each allegation of harassment be fully investigated. (Harassment Policy, p. 3). Under this policy, employees are to report any behavior they view as harassment before it becomes severe or pervasive. *Id.* at p. 2. The policy directs employees to report harassment to any of the following: (1) Dispute Resolution Team in the Office of Civil Rights and Equal Opportunity; (2) Federal Women's Program Manager; (3) Employee Assistance Program Staff; (4) their local union representative; or (5) their first-line supervisor or someone higher in their chain of management (collectively "reporting officials"). *Id.* at p. 3. The policy also states that employees may directly confront the harasser before complaining to a reporting official, but if this is ineffective, any further delay may be found unreasonable. *Id.* at p. 4.

In accordance with the SSA's harassment policy, an independent investigation into Plaintiff's harassment claims was initiated pursuant to the Equal Employment Opportunity Commission's ("EEOC") Enforcement Guidance on Monday, March 27, 2006. (DSOF, ¶17). On April 11 and 12, 2006, two independent investigators took the statements of Plaintiff and Juitt's co-workers. (Marten Depo., 14:11-15:7; DSOF, ¶¶17-18; Doc. ##20-10 through 20-23). The investigators interviewed Ken Linder (Doc. #20-10), Duona Richard (Doc. #20-11), Anna Richard (Doc. #20-12), Sheila Ross-Lewis (Doc. #20-13), Vicky Price (Doc. #20-14), Jan Frye (Doc. #20-15), Beverly Gorham (Doc. #20-16), Gerry Huffman (Doc. #20-17), Shawn Kiesling (Doc. ##20-18, 20-23), Gary Brush

---

[3]Juitt was on leave when Plaintiff made the report to Kistner on Friday, March 24, 2006. (Juitt Time Record).

3

(Doc. #20-19), Bob Arvin (Doc. #20-20), Carol Poland (Doc. #20-21), and Cora Carter (Doc. #20-22). Each employee stated he or she had never seen Juitt touch Plaintiff inappropriately, kiss her on the cheek, rub her leg, touch her hair, or touch her stomach area. (Doc. ##20-10 through 20-23). They further reported that they did not recall anything unusual happening between Juitt and Plaintiff on February 8, 2006; February 16, 2006; March 6 or 7, 2006; or March 22, 2006. *Id.* None of the co-workers had ever seen Juitt touch any employee inappropriately or kiss another employee. *Id.*

Vicky Price told investigators that she felt if anyone should be filing a complaint, it should be Juitt because Plaintiff was always at his desk, leaning over him. (Doc. #20-14, p. 2). Beverly Gorham felt Plaintiff was unnecessarily hard on Juitt throughout his training, spoke to him in a condescending manner, and was generally mean to him. (Doc. #20-16, p. 1). Bob Arvin stated that Juitt's cubicle is very exposed and that he walked by it several times and had never seen anything inappropriate. (Doc. #20-20, p. 1).[4] Shawn Kiesling stated that Plaintiff was always hovering over Juitt for unusual amounts of time and that Juitt was uncomfortable. (Doc. #20-23). Juitt denied Plaintiff's allegations of sexual harassment. (Juitt Statement, pp. 1-2, 5).

On May 16, 2006, Marten determined that the evidence collected during the investigation did not support a finding of a sexual hostile work environment based on the employees' and managers' statements and that no one reported observing any of the numerous incidents alleged by Plaintiff, particularly in light of the busy and public areas in which the alleged incidents occurred.

---

[4]Prior to being separated, Plaintiff and Juitt worked in a very large, well-lit space with no internal walls separating the work spaces. (DSOF, ¶21). All of the work spaces were cubicles open to walking aisles and grouped close together. (Plaintiff Depo., 12:8-13:24).

4

(Marten Memo, p. 10).[5]  No disciplinary action was taken against Juitt or Plaintiff following the investigation.  (Ltr. to Plaintiff; Ltr. to Juitt).  Nevertheless, the SSA has continued to separate Plaintiff and Juitt and did not assign them to the same module or workstations within close physical proximity of each other. (DSOF, ¶30).  Plaintiff has not reported any sexual harassment since March 24, 2006.  *Id.*

Prior to making her complaint to Kistner, Plaintiff had not reported the alleged harassment to anyone other than her husband, Robert Gaugh, Jr. ("Gaugh").  (Gaugh Aff., ¶7; DSOF, ¶6).  Gaugh, who is also employed by the SSA as Module Manager in Section 5, contends he mentioned Juitt's alleged conduct to Paula Delich, Assistant Module Manager in Module 26.  (Gaugh Aff., ¶¶4, 8-9).  Delich recalls Gaugh discussing his wife's problems training an individual but does not remember Gaugh naming Juitt or stating that Juitt kissed or inappropriately touched Plaintiff.  (Delich Statement, pp. 1-2).  Neither Gaugh nor Delich had any supervisory role over Plaintiff or Juitt.  (Gaugh Aff., ¶¶4, 8-9).

In March 2006, the SSA announced vacancies for promotions to fifteen Claim Authorizer positions. (Plaintiff Depo., 35:17-24).  To determine which applicants would receive the promotion, Ethel Johnson, acting as the selecting official, developed a system to score and rank qualified applicants with input from their respective module managers and operation managers.  (Johnson Aff., ¶¶1, 9, 11).  Applicants were first scored by their respective module managers in five areas: dependability, initiative, productivity, quality, and work habits.  *Id.*  Then the operations managers indicated whether their section's applicants were highly recommended, recommended, or not

---

[5]*See, supra*, n.4.

recommended for the promotion and ranked those applicants based on the recommendations and scores. *Id.* at ¶14.

Six individuals in Section 2, including Plaintiff, applied for the promotion. (Aldape Depo., 23:12-21). Kistner, as Plaintiff's module manager, scored her under the five categories, giving her "5's" in each category expect work habits where she received a "4." . *Id.* as 23:25-24:13; Sec. 2 CA Worksheet. Two applicants in Section 2 received scores of "5" in every category and an additional applicant received four "5's" and one "4." (Sec. 2 CA Worksheet). These three applicants and Plaintiff were highly recommended by Aldape based on the scores. *Id.*

Before he ranked the applicants, Aldape became aware of concerns with Plaintiff's interpersonal skills. (Aldape Depo., 35:20-36:1). Duona Richard complained to Aldape that Plaintiff was insensitive and acted like she was better than others, that it was difficult to approach Plaintiff with problems, and Ms. Richard's general difficulties with Plaintiff as team leader. *Id.* at 36:8-20. Ms. Richard stated she had discussed her complaint with Kistner. *Id.* When Aldape followed up with him, Kistner revealed that three employees had complained about Plaintiff since she had reported the alleged harassment. (Kistner Aff., ¶¶19, 44). Kistner personally believed Plaintiff's interactions with her co-workers were acceptable but understood that her very businesslike approach may cause her co-workers to have a different perception. *Id.* at ¶17. He opined Plaintiff's difficulties with others arose from her matter-of-fact and sometimes unsympathetic attitude. *Id.* at ¶21. Aldape then ranked Plaintiff fourth out of the six applicants from Section 2. (Sec. 2 CA Worksheet; Aldape Depo., 29:3-23; 35:20-37:25).

After Aldape completed the rankings, Johnson realized she had omitted a qualified applicant from Section 2. (Johnson Depo., 38:3-14). The omitted applicant was scored identically to Plaintiff

6

and was ultimately ranked higher than Plaintiff, which pushed Plaintiff to fifth out of the seven applicants from Section 2. (Sec. 2 CA Worksheet). Johnson chose the top three applicants from Section 2 for the promotion. (Johnson Depo., 41:24-42:5; Sec. 2 CA Worksheet).

7

Case 4:07-cv-00901-GAF   Document 23   Filed 05/18/09   Page 7 of 12

**II.     Standard**

Pursuant to Rule 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes that are irrelevant or unnecessary will not be considered. *Id.* Additionally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (*citing Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 873 (8th Cir. 2005)).

In the absence of a factual dispute relating to an essential element of a party's claims, the Court will proceed to determine whether that party is entitled to judgment as a matter of law. *See E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001). In determining whether summary judgment is appropriate, the Court views all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *See Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).

**III.    Analysis**

*A.     Harassment Claim*

To establish her *prima facie* hostile work environment claim for co-worker sexual harassment, Plaintiff must prove: (1) she was a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a casual nexus between the harassment and her membership in the

8

protected group; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the SSA knew or should have known of the harassment and failed to take prompt and effective remedial action. *Anda*, 517 F.3d at 531-32 (*citing Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 549-50 (8th Cir. 2007)).

Assuming Plaintiff can establish the first four elements of the *prima facie* case, she presents no evidence to demonstrate the SSA knew or should have known of the alleged harassment prior to March 24, 2006 or to show the SSA failed to take prompt and effective remedial action after obtaining knowledge of the alleged harassment. "[W]here an employer has a complaint procedure delineating the individuals to whom notice of harassment must be given," actual notice is established when the employee notifies those individuals. *Weger v. City of Ladue*, 500 F.3d 710, 721 (8th Cir. 2007) (citation omitted). "'Constructive notice, on the other hand, is established when the harassment was so severe and pervasive that management reasonably should have known of it.'" *Id.* (*citing Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003)).

The evidence demonstrates Defendant first received actual knowledge of the alleged harassment on March 24, 2006 when Plaintiff told Kistner, a reporting official as defined by the SSA's harassment policy, about the alleged harassment. Kistner and Aldape immediately took action to prevent any further harassment of Plaintiff by Juitt by transferring him to another module physically located on the opposite end of the building. This action proved effective; no further harassment has occurred since that action was taken.

Nor can Plaintiff show the harassment was so severe and pervasive that the SSA had constructive knowledge of it. Thirteen co-workers stated to the investigators that they had not witnessed any of the alleged harassment and did not recall any unusual happenings between Plaintiff

9

and Juitt on the alleged dates of harassment. Plaintiff provides no contrary evidence that the SSA should have known of the harassment because of its severity or pervasiveness.[6]

Plaintiff attempts to argue that her husband's purported conversation with Delich somehow gave the SSA notice of the harassment. Both Gaugh and Delich had no supervisory power over Plaintiff and Juitt and therefore were not reporting officials as defined by the SSA's harassment policy. Without notice to a reporting official, the SSA cannot be charged with actual knowledge. *See Weger*, 500 F.3d at 721 ("[B]ecause the [defendant] has a published policy that provides a procedure for reporting suspected harassment, Plaintiffs must have invoked this procedure in order to establish actual notice."). Additionally, this alleged conversation is not constructive notice of harassment. There is no evidence Delich or Gaugh further discussed the alleged harassment with each other or any other manager in the SSA, *see Jenkins v. Winter*, 540 F.3d 742, 749-50 (8th Cir. 2008) (finding ongoing discussions between supervisory staff was evidence of constructive notice), or that Delich witnessed any of the alleged harassment. *See Weger*, 500 F.3d at 721-22. For these reasons, Defendant's Motion with regard to Plaintiff's harassment claim is GRANTED.

---

[6]Plaintiff attempts to introduce an incident between Duona Richard and Juitt, which Ms. Richard described as "different." Plaintiff cites "Ex. 15, p. 81 of 82" as support for this factual assertion. Plaintiff only attached nine exhibits to her Response Brief and Defendant's Exhibit 15 only has three pages. The Court is not obligated to search the record for the facts supporting Plaintiff's assertion, *see Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800-01 (8th Cir. 2004), and therefore will not consider this alleged incident.
    Even if Plaintiff could support this assertion, it was one incident and therefore would not rise to the level of severity or pervasiveness contemplated for constructive knowledge. *See Weger*, 500 F.3d at 721-22 (finding six instances of harassment observed by the defendant's employees lacked the requisite pervasiveness to support a finding of constructive knowledge).

*B.     Retaliation Claim*

The Court analyzes a retaliation claim under the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1142 (8th Cir. 2008) (citation omitted). First, Plaintiff must prove the *prima facie* case of retaliation. *Richey v. City of Independence*, 540 F.3d 779, 784 (8th Cir. 2008). If she successfully bears this burden, the SSA must demonstrate a legitimate non-discriminatory reason for its action. *Id.* Then the burden shifts back to Plaintiff to show this reason is pretextual. *Id.*

Assuming Plaintiff can establish the *prima facie* case for retaliation, she cannot demonstrate the SSA's legitimate non-discriminatory reason for choosing others for the promotion was pretextual. To prove pretext, Plaintiff must show the SSA's explanation is unworthy of credence. *Riser v. Target Corp.*, 458 F.3d 817, 820 (8th Cir. 2006) (*citing Rose-Matson v. NME Hosps., Inc.*, 133 F.3d 1104, 1108 (8th Cir. 1998)). Plaintiff attacks the credence of the SSA's system used to determine which applicant would be promoted by arguing that her ranking was impermissibly skewed by co-workers' statements that Plaintiff may have some interpersonal issues given after these co-workers were interviewed during the investigation of her harassment claims.

Plaintiff does not present evidence rebutting the SSA's contention that those chosen for the promotion were better qualified. Kistner, who did not believe Plaintiff had interpersonal skill issues, scored her with four "5's" and one "4." Those applicants ranking higher than Plaintiff either scored the same or better than her. Even though he ranked her fourth, Aldape still highly recommended Plaintiff for the promotion. Further, Aldape had no control over how many applicants from Section 2 would be chosen for the promotion and therefore could not know when ranking her that, despite his high recommendation, she would not receive the promotion because Johnson would ultimately

11

only choose three applicants from Section 2. Therefore, summary judgment is GRANTED with regard to Plaintiff's retaliation claim.

## CONCLUSION

Plaintiff cannot prove the *prima facie* case for hostile work environment and cannot demonstrate that the SSA's legitimate non-discriminatory reason for promoting others to the exclusion of Plaintiff were pretextual. Defendant's Motion is therefore GRANTED.

**IT IS SO ORDERED.**

s/ Gary A. Fenner<br>
Gary A. Fenner, Judge<br>
United States District Court

DATED: May 18, 2009